A96A1866. BEASLEY v. AGRICREDIT ACCEPTANCE
CORPORATION.
(480 SE2d 257)

Judge Harold R. Banke.

Agricredit Acceptance Corporation ("AAC") sued James F. Beasley to collect the deficiency on a retail installment contract, after the repossession and sale of the collateral. Beasley counterclaimed asserting that AAC's own actions created the default, and that AAC's unlawful efforts to collect the debt injured and damaged him. Beasley challenges the summary judgment awarded in favor of AAC.

The record shows that four separate contracts formed the basis of the instant action. In the first two contracts, James F. Beasley, as president of Floyd Beasley & Sons, Inc., and individually as co-debtor entered into installment contracts to purchase two pieces of equipment, a used Ranger Model 665 Skidder and a used John Deere Model 544C Feller Buncher. These contracts were subsequently assigned to AAC as a secured creditor. When Beasley defaulted by failing to make timely payments, AAC and Beasley executed a renewal and refinancing agreement which consolidated the payments due under the two past due contracts. It is undisputed that Beasley executed the first three contracts both in his corporate capacity and also individually as co-debtor. When Beasley again fell behind in his payments, AAC and Beasley entered a fourth contract,

the second renewal and financing agreement, which unlike the three prior contracts was executed only by the corporation, and signed by Beasley only in his corporate capacity as president. The express terms of this contract renewed and restated the duties and obligations of the parties, and provided the "execution and delivery of this Agreement shall not rescind or revoke the refinanced Contract(s) or affect in any way the rights and obligations thereunder. . . ."

On two separate occasions, the secured collateral was damaged by fire, and AAC received the insurance proceeds as the loss payee under the insurance policy. Each time delays in obtaining repairs resulted in the loss of the use of the feller buncher. After the second fire, because the balance due exceeded the amount of the insurance proceeds and payments to AAC had been erratically tendered, AAC required that Beasley bring the account current before AAC would release the insurance proceeds to the repair center. Ultimately, AAC repossessed the collateral, sold it at a public sale, then sued Beasley individually for a deficiency in the principal amount of $18,511.07.

In Beasley's defenses and counterclaim, he asserted inter alia that the second renewal and refinancing agreement extinguished his obligations as co-debtor. He further argued that AAC withheld the insurance proceeds without justification thereby delaying the repair of the equipment, depriving him of its use, and preventing him from satisfying his financial obligations. Beasley claimed that AAC's unwarranted collection efforts and other acts resulted in financial distress, caused his heart attack, and entitled him to damages and expenses. *Held*:

1. Beasley contends the trial court erred in determining that he was individually liable for the corporation's indebtedness because he did not sign the second renewal and financing agreement in his individual capacity. Beasley argues that by allowing him to sign the agreement in his corporate capacity only, AAC revised the terms of the contract and released him from individual liability for the deficiency. See OCGA § 13-5-7.

In order for Beasley to be released, there must be clear evidence that AAC intended his release and that his liability was extinguished. *Commonwealth Land Title Ins. Co. v. Miller*, 195 Ga. App. 830, 832 (395 SE2d 243) (1990). Here, the record contains no such evidence. The contract terms specifically provided that the agreement neither rescinded nor revoked the prior contracts nor affected the underlying rights and obligations. Thus, the express terms of the contract belie Beasley's contention that AAC intended to extinguish the terms of the previous agreement. See *Farris v. Pazol*, 166 Ga. App. 760, 762 (1) (305 SE2d 472) (1983).

Nor is there merit to Beasley's contention that the second renewal agreement was a novation. A novation is itself a new con-

tract and must have the following essential elements: (1) a prior valid obligation, (2) the agreement of all parties to the new contract, (3) the extinguishment of the old contract, and (4) the validity of the new contract. *M. W. Buttrill, Inc. v. Air Conditioning Contractors*, 158 Ga. App. 122, 124 (3) (a) (279 SE2d 296) (1981). If any of the essential elements is lacking, there is no novation. Id. Here, Beasley failed to show the extinguishment of the old contract. Inasmuch as the record fails to support Beasley's novation defense, and in the absence of any issue other than Beasley's personal liability, AAC was entitled to summary judgment as a matter of law on its contract claim. OCGA § 9-11-56 (e); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

2. Notwithstanding Beasley's claim to the contrary, AAC had a right to the insurance proceeds. It is undisputed that AAC was listed as the loss payee and that AAC was owed substantially more than the amount of the insurance proceeds. As the designated payee under the insurance policy, AAC was entitled to all of the insurance proceeds up to the total amount of the debt secured by the fire-damaged collateral. See *Rice v. State Farm Fire &c. Co.*, 208 Ga. App. 166, 171 (2) (430 SE2d 75) (1993). Because AAC was contractually entitled to the insurance funds under the insurance policy required by the installment contracts, Beasley's interest in the proceeds existed only to the extent that the insurance proceeds exceeded the debt owed to AAC. Id. at 171. Since there was a deficiency, Beasley had no claim to the proceeds as a matter of law. Id.

Nor is there merit to Beasley's claim based on AAC's alleged failure to timely pay the insurance proceeds to him or to a repair shop. Nothing in the parties' contract excused Beasley from making payments in the event the equipment was damaged by fire. AAC had a right to hold the insurance proceeds until Beasley cured his default under the contracts. A cause of action cannot be brought against a party to a contract for exercising its contractual rights. *Yamaha of Atlanta v. Yamaha Motor Corp.*, 188 Ga. App. 413, 414 (1) (373 SE2d 95) (1988).

Nor did Beasley offer any evidence to show that AAC's attempts to collect a valid debt, after default, constituted intentional infliction of emotional distress. *Jenkins v. Gen. Hosps. of Humana*, 196 Ga. App. 150, 152 (395 SE2d 396) (1990); *East River Sav. Bank v. Steele*, 169 Ga. App. 9, 10 (311 SE2d 189) (1983). Moreover, Beasley failed to offer any medical records or expert medical testimony that AAC's collection efforts caused his medical problems. In the absence of any evidence of wrongful or illegal conduct by AAC as the cause of any legally cognizable injury or loss to Beasley, AAC was entitled to summary judgment on his counterclaim. *Smith v. Singleton*, 124 Ga. App. 394, 396 (4) (184 SE2d 26) (1971).

*Judgment affirmed. Johnson and Ruffin, JJ., concur.*

DECIDED JANUARY 8, 1997 —
RECONSIDERATION DENIED JANUARY 28, 1997.

*Callaway, Neville & Brinson, William J. Neville, Jr.*, for appellant.

*Thompson, O'Brien, Kemp & Nasuti, R. Michael Thompson, Paul J. Morochnik, Jill I. Seligman*, for appellee.